## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Marble VOIP Partners LLC <br><br>                Plaintiff, <br>     v. <br><br> Zoom Video Communications, Inc. <br><br>                Defendant. | Case No. <br><br> Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Marble VOIP Partners LLC ("Plaintiff"), by and through its counsel, files this Complaint against Zoom Video Communications, Inc. ("Zoom" and/or "Defendant") for infringement of United States Patent No. 7,376,129 ("the '129 Patent" or the "Patent-in-Suit"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for infringement of the Patent-in-Suit arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*   Specifically, this action relates to a patent directed to a method, program storage device, and system for enabling Voice over Internet Protocol ("VoIP") for computer applications.

## PARTIES

2.      Plaintiff Marble VOIP Partners LLC is a domestic limited liability company incorporated under the laws of the State of Texas and having a place of business at 3610-2 N. Josey, Suite 223, Carrollton, Texas 75007.

3.      Zoom is a publicly traded video communications and online media company, organized under the laws of Delaware, with a principal place of business at 55 Almaden Boulevard, 6th Floor, San Jose, California 95113.  Zoom maintains a regular and established place of business at its office located at 6601 College Boulevard, Overland Park, Kansas 66210.

4.      On information and belief, Zoom has had a regular and established place of business in this judicial district since at least 2016.

5.      Defendant distributes, sells, and/or imports products throughout the United States and does business in every state, including Kansas, either directly or indirectly.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because this is a patent infringement action that arises under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*

7.      This Court has specific and general personal jurisdiction over Zoom under due process and/or the Kansas Long Arm Statute, because Zoom has committed infringing acts giving rise to this action in Kansas and within this judicial district.  This Court's exercise of jurisdiction over Zoom would not offend traditional notions of fair play and substantial justice because Zoom has established minimum contacts with this forum.   For example, on information and belief, Zoom has committed acts of infringement in this judicial district by, among other things, selling and offering for sale

products that infringe the Patent-in-Suit, directly or through intermediaries, as alleged herein.

8.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b) because, among other things, Defendant is registered to do business in Kansas, maintains a regular and establish place of business in this district, and commits acts of infringement in this district.  Additionally, upon information and belief, Zoom has dozens of employees at its Kansas City office and advertises senior level positions at this office.  Further, upon information and belief, the witnesses and proof necessary for this action are easily accessible in this district.

## PERSONAL JURISDICTION OVER ZOOM

9.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

10.     This Court has personal jurisdiction over Zoom in part because a substantial portion of the events giving rise to the claims alleged in this Complaint, for which Zoom is responsible, occurred in Kansas.

11.     Zoom is subject to personal jurisdiction of this Court because, *inter alia*, on information and belief, (i) Zoom maintains a regular and established place of business in this judicial district at 6601 College Boulevard, Overland Park, Kansas 66210; (ii) Zoom sells products and services to customers in this judicial district; (iii) the patent infringement claims arise directly from Zoom's continuous and systematic activity in this judicial district; and (iv) Zoom actively employs and seeks the services of Kansas residents in this judicial district.

12.     Specifically, Zoom's products are used and sold throughout the United States, including Kansas.  Upon information and belief, Zoom makes, uses, sells, and offers to sell, Zoom Meetings and Zoom Phone (collectively, "Zoom platform") within Kansas, which are used in Kansas by customers.  Each of these activities constitutes direct and indirect infringement of the Patent-in-Suit in Kansas.

13.     Therefore, Zoom purposefully availed itself of the privileges of conducting business in Kansas and within this judicial district; established sufficient minimum contacts in Kansas and within this judicial district such that it should reasonably and fairly anticipate being subject to litigation in Kansas and within this judicial district; purposefully directed activities towards Kansas residents and this judicial district; and Zoom's foregoing activities resulted in at least a portion of the patent infringement claims alleged herein, which arise out of or are related to one or more of the foregoing activities.

14.     Accordingly, this Court has personal jurisdiction over Zoom, which, on information and belief: (1) has committed acts of patent infringement in the State of Kansas and within this judicial district; (2) has substantial, regularly conducted, and systematic business contacts in the State of Kansas and within this judicial district; (3) owned, managed, and marketed products in the State of Kansas and within this judicial district; and (4) enjoy substantial income from selling products in the State of Kansas and within this judicial district.

## BACKGROUND

### The Patent-in-Suit

15.     Dr. Arup Acharya is the first-named inventor of the Patent-in-Suit.  *See* United States Patent No. 7,376,129, attached as **Exhibit 1**.

16.     Dr. Acharya has an undergraduate degree in Computer Science from the Indian Institute of Technology Kharagpur, and a Ph.D. in Computer Science from Rutgers University.

17.     Dr. Acharya has conducted research in Computer Science for over 20 years and is currently the Head of Research and Innovation at TCS Digital Software & Solutions.

18.     Dr. Acharya also holds multiple U.S. patents in the field of Session Initiation Protocol ("SIP") based Voice over Internet Protocol ("VoIP") technology.

19.     The rights to patent application number 10/695,856, which issued as the Patent-in-Suit, were assigned to International Business Machines Corporation ("IBM") by Dr. Acharya and the other inventors and recorded on October 29, 2003, the patent application's filing date; during this time Dr. Acharya was an employee of IBM, a foremost leader in technology.

20.     After several assignments, all rights, title and interest of the '129 Patent were assigned to Plaintiff on July 15, 2020.  *See* Patent Assignment Cover Sheet & Assignment Agreement, annexed hereto as **Exhibit 2.**

21.     Session Initiation Protocol ("SIP") has emerged as a vehicle to enable VoIP, and both enterprise networks and service provider networks use SIP as a vehicle to enable VoIP in enterprise and carrier networks.  *See* Exhibit 1 at 1:11-24.

22.     While SIP support is bundled with individual applications, such as an Instant Message ("IM") client or an IP softphone, individual applications often had to support SIP themselves.  This was problematic; since each application is separate, no other application can use a port that the other application was using.  Thus, there was a need for desktop applications to uniformly invoke SIP.  Further, there was a need for a framework that could enable applications with VoIP through SIP.  *Id.* at 1:29-43.

23.     Previously, there were significant disadvantages to using SIP; each individual application had its own SIP, which wasted resources and created conflicts when multiple applications attempted to use the same port.  *Id.* at 1:29-37.

24.     The invention claimed in the Patent-in-Suit provides, *inter alia*, a framework for enabling applications to use SIP-based VoIP; the framework makes SIP a recognizable protocol at a system level and provides a protocol handler available to all applications on the system.  *Id.* at 2:30-38.

25.     Thus, the claimed invention solved the problems found in the prior art through strong coupling of the SIP infrastructure and collaborative applications; this solution reduced the time to create voice calls, allowed applications to use native SIP capabilities previously lost upon injection of additional layers/components between applications and SIP, enhanced efficiency, and strengthened the system, because only the SIP infrastructure, including protocols and servers, are needed.  *Id.* at 3:9-17.

**United States Patent No. 7,376,129**

26.     U.S. Patent No. 7,376,129, titled "Enabling Collaborative Applications Using Session Initiation Protocol (SIP) Based Voice over Internet Protocol Networks VOIP," was duly and legally issued on May 20, 2008.  *See* Exhibit 1.

27.     The named inventors on the '129 Patent are Arup Acharya, Dilip Dinkar Kandlur, Priya Mahadevan, Zon-yin Shae, and Aameek Singh.

28.     The '129 Patent will expire at least as early as May 5, 2026, per the 35 U.S.C. § 154(b) patent term adjustment.

29.     The '129 Patent claims a method, program storage devcice, and system for enabling Voice over Internet for computer applications.

30.     The claims of the '129 Patent are valid, enforceable, and active.

31.     All rights, title and interests in the '129 Patent are owned by and assigned to Marble VOIP Partners LLC.

**Zoom Phone**

32.     Zoom makes, sells, and distributes Zoom Phone throughout the United States.  *See Zoom Phone Page*, ZOOM (last visited Feb. 18, 2022), https://explore.zoom.us/en/products/zoom-phone/, attached as **Exhibit 3**.

33.     Zoom makes, uses, sells, offers to sell and/or imports Zoom Phone, which makes and receives Voice over Internet Protocol (VoIP) for computer applications. Further, Zoom Phone registers SIP as a system service to handle inbound and outbound calls, transfer calls, dial-in and dial-out of meetings, establish a do-not-disturb for a device, and set up voicemail with a message-waiting indicator.  *See Changing Zoom Phone*

*Settings* (last visited Feb 18, 2022), https://support.zoom.us/hc/en-us/articles/360030985091-Changing-phone-settings-client-or-app- , attached as **Exhibit 4**.

### Zoom Meetings

34.     Zoom makes, sells, and distributes the Zoom Meetings platform throughout the United States. *See Zoom Meetings*, (last visited Feb 18, 2022) https://explore.zoom.us/en/products/meetings/ , attached as **Exhibit 5**.

35.     Zoom makes, uses, sells, offers to sell and/or imports the Zoom Meetings platform, which makes and receives Voice over Internet Protocol (VoIP) for computer applications.  Further, the Zoom Meetings platform registers SIP as a system service to handle inbound and outbound calls, transfer calls, dial-in and dial-out of meetings, establish a do-not-disturb for a device, and set up voicemail with a message-waiting indicator. *See Inviting a SIP/H.323 Room System to a Meeting*, (last updated May 17, 2022), https://support.zoom.us/hc/en-us/articles/203736425-Inviting-a-SIP-H-323-room-system-to-a-meetingt , attached as **Exhibit 6.**

### Notice of the Patent-in-Suit

36.     Zoom received notice of the Patent-in-Suit at least when Plaintiff sent correspondence on June 22, 2022, which was received on June 23, 2022, to the Chief Executive Officer of Zoom, Eric Yuan, informing him of the existence of the '129 Patent and the infringement of same by Zoom.  *See* Notice Letter; attached as **Exhibit 7**.

37.     Plaintiff's Notice Letter instructed Zoom to immediately cease and desist from engaging in any further activity that would infringe the '129 Patent.  On information and belief, Zoom has not altered its conduct in response to Plaintiff's Notice Letter.

38.     Zoom has therefore induced infringement of the Patent-in-Suit in violation of 35 USC § 271(b), by providing to the public, at a minimum, the Zoom Platform, along with touting the benefits of the Zoom Platform and with instructions for using these software platforms to the public, in a manner that directly infringes the Patent-in-Suit.

## PATENT INFRINGEMENT

### Count I: Infringement of United States Patent No. 7,376,129:  Zoom Phone

39.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

40.     On information and belief, and without authority, consent, right, or license, Zoom makes, uses, sells, offers to sell and/or imports Zoom Phone in the United States. In doing so, Zoom infringes claims 1 – 3, 5 – 15 and 17 - 31 of the '129 Patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing Zoom Phone.  Through these activities, Zoom also actively induces infringement by others under § 271(b) by at least providing to the public, at a minimum, Zoom Phone, touting Zoom Phone's benefits and directions instructing users how to use Zoom Phone in a manner that directly infringes the '129 Patent.

41.     Zoom commits acts of patent infringement by manufacturing, using, offering for sale, selling and/or importing at least Zoom Phone.

42.     For example, claim 22 of the '129 Patent claims:

A program storage device readable by machine, tangibly embodying a program of instructions executable by the machine to perform method steps for enabling voice over Internet for computer applications, the method comprising:

registering session initiation protocol (SIP) as a system service;

providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application; and

passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application.

43.     Zoom Phone meets the claim element "A program storage device readable by machine, tangibly embodying a program of instructions executable by the machine to perform method steps for enabling Voice over Internet for computer applications. . ." as evidenced by its support instructions for using Zoom Phone with managed SIP/H.323 devices on Zoom's website and advertisements for VoIP services for Zoom on its website, which describes enabling Voice over Internet for computer applications.  *See* Exhibit 3; *See Using Zoom Phone with Managed SIP/H.323 Devices,* ZOOM (last updated April 28, 2022), https://support.zoom.us/hc/en-us/articles/4403484662157-Using-Zoom-Phone-with-managed-SIP-H-323-devices, attached as **Exhibit 8**, *Small Business VoIP Service Made Easy*, ZOOM (last visited May 13, 2022), https://explore.zoom.us/en/small-business-phone-service/, attached as **Exhibit 9;** *What is a VoIP Phone?*, Zoom (last visited May 13, 2022), https://explore.zoom.us/en/what-is-voip-phone/, attached as **Exhibit 10;** and *VOIP*

*Service from Zoom*, ZOOM (last visited Feb. 18, 2022), https://explore.zoom.us/en/voip-service/; attached as **Exhibit 11**.

44.     Zoom utilizes cloud technologies as well as data centers with servers which act as the program storage devices that perform and deliver the Zoom Phone platform. See *Inside Zoom's Infrastructure: Scaling Up Massively With Colo and Cloud*, (last visited Feb. 18, 2022), https://datacenterfrontier.com/inside-zooms-infrastructure-scaling-up-massively-with-colo-and-cloud/ , attached as **Exhibit 12**; and Exhibit 9.

45.     Further, Zoom sells and offers to sell hardware devices which provide access to Zoom Phone.  *See How Zoom's Hardware as a Service Lets You Connect Anywhere* (last visited Feb. 18, 2022), https://blog.zoom.us/zooms-hardware-as-a-service-connect-anywhere/#:~:text=Zoom's%20Hardware%20as%20a%20Service%20(HaaS)%20gives%20businesses%20of%20all,to%20let%20businesses%20connect%20anywhere , attached as **Exhibit 1**3; *Zoom Hardware as a Service Product page,* Zoom (last visited May 27, 2022), https://explore.zoom.us/en/hardware-as-a-service/; attached as **Exhibit 14**.

46.     Additionally, Zoom sells and offers to sell Zoom Phone as a program for Android, iOS, and desktop devices, which enables VOIP with Zoom data centers and servers.  *See Getting Started with Android,* ZOOM (last updated Feb. 8, 2022), https://support.zoom.us/hc/en-us/articles/200942759-Getting-started-with-Android, attached as **Exhibit 15**, *Getting Started With iOS,* Zoom (last updated Dec. 15, 2021), https://support.zoom.us/hc/en-us/articles/201362993-Getting-started-with-iOS, attached as **Exhibit 16**, and *Getting started with Zoom Phone (users)*, Zoom (last updated

Mar. 22, 2022), https://support.zoom.us/hc/en-us/articles/360028936531-Getting-started-with-Zoom-Phone-users-; attached as **Exhibit 17**.

47.     Zoom Phone meets the claim element for "registering session initiation protocol (SIP) as a system service" as evidenced by Zoom Phone's product page including a section on SIP providing security for its voice communications. *See Zoom Phone Product Webpage*, ZOOM (last visited Feb. 18, 2022), https://explore.zoom.us/en/products/zoom-phone/; attached as Exhibit 3. This is further evidenced by the Zoom Phone Blog entry on Security features referring to registering an SIP as a step during which it encrypts information. *See* Sonali Karnik, *Answering the Call: How Zoom Phone Helps Keep Your Communications Secure and Compliant*, ZOOM (Jan. 6, 2022) https://blog.zoom.us/zoom-phone-communications-secure-and-compliant/, attached as **Exhibit 18**; *See also*, *Zoom Rooms PBX Support*, (last visited April 6, 2022), https://support.zoom.us/hc/en-us/articles/215537603-Zoom-Rooms-PBX-Support, attached as **Exhibit 19**; Exhibit 16; Exhibit 17; *Managing Provisioned SIP-H323 Rooms*, (last visited April 6, 2022), https://support.zoom.us/hc/en-us/articles/360043760172-Managing-provisioned-SIP-H-323-rooms, attached as **Exhibit 20**; and Walt Anderson, *Zoom Releases SIP-Connected Audio & Other New Audio Features*, ZOOM (Aug. 29, 2018), https://blog.zoom.us/zoom-releases-sip-connected-audio-other-new-audio-features/, attached as **Exhibit 21.**

48.     The Zoom Phone platform meets the claim element for "providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the

application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application. . ." as evidenced by the Zoom support services article for the Enhanced Zoom Connector, which describes how the API room Connector allows users to register and configure SIP/H.323 managed devices to join Zoom meetings. *See Enhanced Zoom Connector for SIP/H.323 devices*, ZOOM (last visited Feb. 18, 2022), https://support.zoom.us/hc/en-us/articles/360052154312-Enhanced-Zoom-Connector-for-SIP-H-323-devices, attached as **Exhibit 22**; and Exhibit 21.

49.     Further, on a softphone, by pressing the "Meet" button on the Zoom Phone, a phone call is elevated to a Zoom meeting.  The call flip feature also allows users to switch devices, which can include desktop computers, SIP phones, or desk phones, while having access to VoIP services.  *See* Exhibit 17.  Additional evidence of Zoom Phone meeting the aforementioned claim element is found within Harvard University's instructions for joining a Zoom meeting from a conference room describing how an SIP address is included in the Zoom meeting invitation (*See Connect to a Zoom meeting from a conference room*, HARVARD U. (last visited Feb. 18, 2022), https://harvard.service-now.com/ithelp/ithelp?id=kb_article&sys_id=1257fc4adb7eb704dffdbc32ba961950, attached as **Exhibit 23**), as well as Zoom's website describing how the SIP authentication process ensures the VoIP is secure. *VoIP Service from Zoom*, ZOOM (last visited Feb. 18, 2022), https://explore.zoom.us/en/voip-service/, attached as Exhibit 11**.**  *See also*, *Starting a meeting from a SIP/H.323 endpoint*, ZOOM (last updated Dec. 23, 2021), https://support.zoom.us/hc/en-us/articles/201854563-Starting-a-meeting-from-a-SIP-

H-323-endpoint, attached as **Exhibit 24**, Starting or Joining a meeting as the host, H.323/SIP, (last visited April 6, 2022), https://support.zoom.us/hc/en-us/articles/201362423, attached as **Exhibit 25**.

50.     Upon information and belief, Zoom Phone meets the claim element for "passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application" as evidenced by the Zoom Phone using SIP signaling between the client and the server to enable voice over Internet service.  *See* Exhibit 21; *See also*, Exhibit 9; Exhibit 22; Exhibit 24; Exhibit 25; and Exhibit 6.

51.     Thus, because Zoom Phone meets all the claim limitations of claim 22, Zoom violates 35 U.S.C. § 271(a) by directly infringing one or more claims of the '129 Patent.

52.     Plaintiff's infringement contentions for claim 22 of the '129 patent by the Zoom Phone is attached as **Exhibit 26.[1]**

53.     Zoom, acting without authority, consent, right, or license of the '129 patent, has induced, and continues to induce, consumers to use Zoom Phone in a manner that directly infringes one or more claims of the '129 Patent resulting in conduct that constitutes, at a minimum, induced patent infringement under 35 U.S.C. § 271(b) and/or contributory infringement under § 271(c).  Specifically, consumers directly infringe (literally and/or under the doctrine of equivalents) claims 1 – 3, 5 – 15 and 17 - 31 of the

---

[1] The annexed infringement contentions are made upon information and belief, are illustrative for purposes of meeting Plaintiff's pleading obligations and should not be construed as binding or limiting.

'129 Patent by using Zoom Phone, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

54.     Annexed hereto as **Exhibit 27** is Plaintiff's infringement contentions of method claim 1 of the '129 patent by the Zoom Phone as an example.[2]

55.     At least as of the date of receipt of the Notice Letter, *see* Exhibit 7, Zoom knew of the '129 Patent, was on notice of its infringement of the '129 patent, and knowingly induced the use by consumers by keeping Zoom Phone in the marketplace and the stream of commerce, and possessed a specific intent to encourage direct infringement of the '129 Patent by the failure to remove at least Zoom Phone from the stream of commerce. *See Pagemelding, Inc. v. ESPN, Inc.*, No. C-11–06263 WHA, 2012 WL 2285201, at *2 (N.D. Cal. June 18, 2012); cf. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1332 (Fed.Cir.2010).

56.     Zoom possessed, and continues to possess, specific intent to induce infringement of the '129 Patent by at least providing to the public, at a minimum, product specifications and the option to purchase and/or use Zoom Phone which directly infringes the '129 Patent.

57.     Zoom has actively induced and encouraged, and continues to actively induce and encourage, consumers to use Zoom Phone by marketing, promoting and advertising the use of Zoom Phone in an infringing manner.

_____

[2] The annexed infringement contentions are made upon information and belief, are illustrative for purposes of meeting Plaintiff's pleading obligations and should not be construed as binding or limiting.

58.     Upon information and belief, Zoom knows that Zoom Phone is especially made or adapted for use in a manner that infringes the '129 Patent, that Zoom Phone is not a staple article or commodity of commerce, and that Zoom Phone is not suitable for substantial non-infringing use, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c).   More specifically, consumers directly infringe (literally and/or under the doctrine of equivalents) claims 1 – 3, 5 – 15 and 17 - 31 of the '129 Patent by using Zoom Phone, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

59.     Zoom's foregoing actions constitute and/or will constitute direct infringement, active inducement of infringement, and contribution, by others, to the infringement of the '129 Patent.

60.     Plaintiff reserves the right to assert additional claims of the '129 Patent that Zoom infringes.

61.     Plaintiff has been damaged as a result of Zoom's infringing conduct. Zoom is thus liable to Plaintiff in an amount that adequately compensates Plaintiff for Zoom's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### Count II: Infringement of United States Patent No. 7,376,129: Zoom Meetings

62.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

63.     On information and belief, and without authority, consent, right, or license, Zoom makes, uses, sells, offers to sell and/or imports the Zoom Meetings platform in the

United States. In doing so, Zoom infringes claims 1 – 3, 5 – 15 and 17 - 31 of the '129 Patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing the Zoom Meetings platform.  Through these activities, Zoom also actively induces infringement by others under § 271(b) by at least providing to the public, at a minimum, the Zoom Meetings platform and directions instructing users how to use Zoom in a manner that directly infringes the '129 Patent.

64.     Zoom commits acts of patent infringement by manufacturing, using, offering for sale, selling and/or importing at least the Zoom Meetings platform.

65.     For example, claim 22 of the '129 Patent claims:

A program storage device readable by machine, tangibly embodying a program of instructions executable by the machine to perform method steps for enabling voice over Internet for computer applications, the method comprising:

registering session initiation protocol (SIP) as a system service;

providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application; and

passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application.

66.     The Zoom Meetings platform meets the claim element "A program storage device readable by machine, tangibly embodying a program of instructions executable by the machine to perform method steps for enabling voice over Internet for computer applications. . ."  Upon information and belief, Zoom Meetings permits participants to

utilize VoIP to connect audio to the virtual meeting.  *See You can Finally Trust Computer Audio with Zoom's VoIP Service* (Last visited February 18, 2022), https://blog.zoom.us/reliable-computer-audio-zoom-voip-service/, attached as **Exhibit 28**.

67.    Zoom utilizes cloud technologies as well as data centers with servers which perform and deliver the Zoom Meetings platform.  *See Inside Zoom's Infrastructure: Scaling Up Massively With Colo and Cloud*, (last visited Feb. 18, 2022), https://datacenterfrontier.com/inside-zooms-infrastructure-scaling-up-massively-with-colo-and-cloud/ , attached as Exhibit 12.

68.    Further, Zoom sells and offers to sell hardware devices which provide access to Zoom Meetings.  See Exhibit 13; Exhibit 14.

69.    Additionally, Zoom sells and offers Zoom Meetings as a program for Android, iOS, and desktop devices which enables VOIP with data centers and servers. *See System Requirements for iOS, iPadOS, and Android*, Zoom. (last updated Dec. 15, 2021), https://support.zoom.us/hc/en-us/articles/201179966-System-requirements-for-iOS-iPadOS-and-Android, attached as **Exhibit 29.**

70.    The Zoom Meetings platform meets the claim element for "registering session initiation protocol (SIP) as a system service" as evidenced by Zoom's announcement for releasing SIP-connected audio on its website, where it describes support for participants to utilize SIP-connected audio in Zoom Meetings.  *See Zoom Releases SIP-Connected Audio & Other New Audio Features*, ZOOM (last visited Feb. 18, 2022), https://blog.zoom.us/zoom-releases-sip-connected-audio-other-new-audio-features/

attached as Exhibit 21; *see also*, *Managing Provisioned SIP-H-323 Rooms*,  (last visited April 6,  2022),  https://support.zoom.us/hc/en-us/articles/360043760172-Managing-provisioned-SIP-H-323-rooms, attached as Exhibit 20; Exhibit 15; Exhibit 16.

71.    The Zoom Meetings platform meets the claim element for "providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application. . ." as evidenced by Zoom support services article for the Enhanced Zoom Connector, which describes how the API room Connector allows users to register and configure SIP/H.323 managed devices to join Zoom meetings.  *See Enhanced Zoom Connector for SIP/H.323 devices*, ZOOM (last visited Feb. 18, 2022), https://support.zoom.us/hc/en-us/articles/360052154312-Enhanced-Zoom-Connector-for-SIP-H-323-devices, attached as Exhibit 22.  Further evidence of Zoom Meetings infringing the aforementioned claim.  For example, Zoom's program SIP-connected audio allows Zoom to create a SIP trunk private connection between a client's network and Zoom's cloud-based VoIP service.  Once a user is linked in, meeting participants are connected into the meeting over the SIP trunk.  *See* Exhibit 21. Additionally, Zoom's website describes how the SIP authentication process ensures the VoIP is secure.  *VoIP Service from Zoom*, ZOOM (last visited Feb. 18, 2022), https://explore.zoom.us/en/voip-service/, attached as Exhibit 11; *see also* Exhibit 25, and Exhibit 6.

72.     Upon information and belief, the Zoom Meetings platform meets the claim element for "passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application" as evidenced by Harvard University's instructions for joining a Zoom meeting from the conference room.  *See Connect to a Zoom meeting from a conference room*, HARVARD   U.   (last   visited   Feb.   18,   2022),   https://harvard.service-now.com/ithelp/ithelp?id=kb_article&sys_id=1257fc4adb7eb704dffdbc32ba961950, attached as Exhibit 23; *see also*, Exhibit 25; Exhibit 6; Exhibit 21.

73.     Thus, because the Zoom Meetings platform meets all the claim limitations of claim 22, Zoom violates 35 U.S.C. § 271(a) by directly infringing one or more claims of the '129 Patent.

74.     Plaintiff's claim chart for the infringement claim 22 of the '129 patent by the Zoom Meetings is attached as **Exhibit 30**.[3]

75.     Zoom, acting without authority, consent, right, or license of the '129 patent, has induced, and continues to induce, consumers to use the Zoom Meetings platform in a manner that directly infringes one or more claims of the '129 Patent resulting in conduct that constitutes, at a minimum, induced patent infringement under 35 U.S.C. § 271(b) and/or contributory infringement under § 271(c).  Specifically, consumers directly infringe (literally and/or under the doctrine of equivalents) claims 1 – 3, 5 – 15 and 17 - 31

---

[3] The annexed infringement contentions are made upon information and belief, are illustrative for purposes of meeting Plaintiff's pleading obligations and should not be construed as binding or limiting.

of the '129 Patent by using the Zoom Meetings platform, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

76.    Annexed hereto as **Exhibit 31** is Plaintiff's infringement contentions of method claim 1 of the '129 patent by Zoom Meetings as an example.[4]

77.    At least as of the date of receipt of the Notice Letter, *see* Exhibit 7, Zoom knew of the '129 Patent, was on notice of its infringement of the '129 patent, knowingly induced the use by consumers by keeping the Zoom Meetings platform in the marketplace and the stream of commerce, and possessed a specific intent to encourage direct infringement of the '129 Patent by the failure to remove at least the Zoom Meetings platform from the stream of commerce.

78.    Zoom possessed, and continues to possess, specific intent to induce infringement of the '129 Patent by at least providing to the public, at a minimum, product specifications and the option to purchase and/or use the Zoom Meetings platform which directly infringes the '129 Patent.

79.    Zoom has actively induced and encouraged, and continues to actively induce and encourage, consumers to use the Zoom Meetings platform by marketing, promoting and advertising the use of the Zoom Meetings platform in an infringing manner.

80.    Upon information and belief, Zoom knows that the Zoom Meetings platform is especially made or adapted for use in a manner that infringes the '129 Patent,

---

[4] The annexed infringement contentions are made upon information and belief, are illustrative for purposes of meeting Plaintiff's pleading obligations and should not be construed as binding or limiting.

that the Zoom Meetings platform is not a staple article or commodity of commerce, and that Zoom Meetings platform is not suitable for substantial non-infringing use, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c). More specifically, consumers directly infringe (literally and/or under the doctrine of equivalents) at least claims 1 – 3, 5 – 15, and 17 – 31 of the '129 Patent by using the Zoom Meetings platform, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

81.    Zoom's foregoing actions constitute and/or will constitute direct infringement, active inducement of infringement, and contribution, by others, to the infringement of the '129 Patent.

82.    Plaintiff reserves the right to assert additional claims of the '129 Patent that Zoom infringes.

83.    Plaintiff has been damaged as a result of Zoom's infringing conduct. Zoom is thus liable to Plaintiff in an amount that adequately compensates Plaintiff for Zoom's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in its favor and against Zoom as follows:

a.      finding that Zoom has infringed, contributed to and induced infringement of one or more claims of the Patent-in-Suit;

b.      awarding Plaintiff damages under 35 U.S.C. § 284, or otherwise permitted by law, and damages for any continued post-verdict infringement;

c.      awarding Plaintiff damages for the unjust enrichment of Zoom;

d.      awarding Plaintiff pre-judgment and post-judgment interest on the damages award and costs;

e.      awarding costs of this action and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

f.      awarding such other costs and further relief the Court determines to be just and equitable.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff hereby designates Kansas City, Kansas as the place of trial.


Dated:  June 24, 2022                    Respectfully submitted,

By:  */s/ James J. Kernell*
James J. Kernell, #19559
Kyle D. Donnelly, #25531
AVEK IP, LLC
8900 State Line Road, Suite 500
Leawood, Kansas 66206
Telephone:  (913) 549-4700
Email:  jkernell@avekip.com
        kdonnelly@avekip.com

Of Counsel:

Christopher J. Belter (*pro hac vice pending*)
Michael A. Siem (*pro hac vice pending*)
Michael J.  Barresi (*pro hac vice pending*)
GOLDBERG SEGALLA LLP
711 Third Avenue, Suite 1900
New York, New York 10017
Telephone:  (646) 292-8700
Email:   cbelter@goldbergsegalla.com
             msiem@goldbergsegalla.com
             mbarresi@goldbergsegalla.com

*Attorneys for Plaintiff*
*Marble VOIP Partners LLC*