IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARBLE VOIP PARTNERS LLC,

      Plaintiff,

      v.

ZOOM VIDEO
COMMUNICATIONS, INC.,

      Defendant.

Case No. 22-CV-2247-JAR-ADM

## MEMORANDUM AND ORDER

Plaintiff Marble VOIP Partners LLC ("Marble") filed this lawsuit under 35 U.S.C.

§§ 271(a), (b), and (c), alleging that Defendant Zoom Video Communications, Inc. ("Zoom") has

directly and indirectly infringed on its patent.  This matter is now before the Court on Zoom's

Motion to Dismiss Marble's First Amended Complaint ("FAC") under Fed. R. Civ. P. 12(b)(6)

(Doc. 29) on the grounds that (1) the claims of the '129 Patent are invalid for claiming ineligible

subject matter under 35 U.S.C. § 101; and (2) Marble's claims for indirect infringement—

induced infringement under § 271(b) and contributory infringement under § 271(c)—fail to meet

the fact-based threshold mandated for pleadings.[1]  The matter is fully briefed, and, after hearing

oral argument, the Court is prepared to rule.  For the reasons explained below, the Court denies

Zoom's motion.

---

[1] Zoom does not contest the FAC's allegations of direct infringement.

# I.    Legal Standards

## A.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2]   "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3]   The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[4] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the Court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[7]   Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8]   Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *Id.*

[8] *Id.* at 679.

entitlement to relief."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

If matters outside the pleadings are reviewed, the Court generally must convert a Rule 12(b)(6) motion to a Fed. R. Civ. P. 56 motion for summary judgment.[11]  However, the Court may consider documents that are attached to or referenced in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.[12]

### B.      Patent Eligibility Under 35 U.S.C. § 101

Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."[13] "Long-standing judicial exceptions, however, provide that laws of nature, natural phenomena, and abstract ideas are not eligible for patenting."[14]  The Supreme Court has warned against applying this exception too broadly, "lest it swallow all of patent law."[15]  Thus, an invention that applies an abstract idea or law of nature "to a new and useful end" may be patent eligible.[16]

In *Alice Corp. Party Ltd. v. CLS Bank International*, the Supreme Court articulated a two-step framework for examining patent eligibility when a patent claim involves one of these

---

[9] *Id.*

[10] *Id.* at 678.

[11] Fed. R. Civ. P. 12(d).

[12] *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997) (explaining "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied").

[13] 35 U.S.C. § 101.

[14] *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) (citation omitted).

[15] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Lab'ies, Inc.*, 566 U.S. 66, 71 (2012)).

[16] *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).

types of subject matter.[17]  Under step one, the court "determine[s] whether the claim is 'directed to' a 'patent-ineligible concept,' such as an abstract idea."[18]  "[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."[19]  If the claims are abstract, the second step of *Alice* requires a court to "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."[20]  "Specifically, [the court] determine[s] whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using 'well-understood, routine, [and] conventional activities previously known to the industry.'"[21]

"Patent eligibility is a question of law that may involve underlying questions of fact."[22] "Thus, patent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant."[23]  "But 'not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry.'  Indeed, that inquiry 'may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under

---

[17] 573 U.S. at 216–23.

[18] *Coop Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022) (quoting *Alice*, 573 U.S. at 217).

[19] *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).

[20] *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72, 78–79).

[21] *Kollective*, 540 F.4th at 130 (third alteration in original) (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)).

[22] *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (citation omitted).

[23] *Kollective*, 50 F.4th at 130 (collecting cases).

the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.'"[24]

Patent invalidity is an affirmative defense to an infringement claim.[25]  A party may raise invalidity as an affirmative defense in a Rule 12(b)(6) motion only when the defense "appears plainly on the face of the complaint itself."[26]  "If the defense does not appear plainly on the face of the complaint, however, the court must deny the Rule 12(b)(6) motion or convert it to one for summary judgment."[27]  Because patents are presumed valid, a successful invalidity defense must prove that a plaintiff's patent is invalid by clear and convincing evidence.[28]  When a court has "a full understanding of the basic character of the claimed subject matter," the question of patent eligibility may properly be resolved on the pleadings.[29]  Although claim construction may sometimes be necessary to resolve whether a patent claim is directed to patent-eligible subject matter, "claim construction is not an inviolable prerequisite to a validity determination under § 101."[30]

## II.    Evidence Considered

Before turning to whether the factual allegations in the FAC are sufficient to withstand a Rule 12(b)(6) motion to dismiss with respect to § 101 eligibility, the Court considers whether the

---

[24] *PersonalWeb*, 8 F.4th at 1314 (first quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); and then quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)).

[25] *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015).

[26] *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965); *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016) ("Courts may . . . dispose of patent-infringement claims under § 101 whenever procedurally appropriate." (citations omitted)).

[27] *Capstan AG Sys., Inc. v. Raven Indus., Inc.*, 228 F. Supp. 3d 1235, 1240 (D. Kan. 2017) (citations omitted).

[28] *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 102–03 (2011); *Berkheimer*, 881 F.3d at 1368.

[29] *Content Extraction & Transmission, LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

[30] *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

54-page expert declaration of Daniel Minoli annexed to the FAC may be considered at this point in the proceedings.[31]  The Court agrees with Zoom that it may not.  Zoom's motion to dismiss turns on the sufficiency of the FAC under Rule 12(b)(6).  While the analysis in this case requires consideration of some highly technical concepts, the Federal Circuit has recognized that "patent eligibility can be determined at the Rule 12(b)(6) stage without the aid of expert testimony."[32]  The Federal Circuit has made clear that it is the patent itself that defines the metes and bounds of intellectual property.[33]  Thus, the fact that Marble is defending against a § 101 invalidity challenge does not necessarily mean that it is authorized to introduce expert declarations at the Rule 12(b)(6) stage.[34]  Indeed, as Zoom points out, the fact that Marble submitted the Minoli Declaration with its original Complaint belies its claim that it forms the legal basis for its cause of action in the FAC.

Nor does the Minoli Declaration qualify as the sort of material a court would be permitted to consider when ruling on a Rule 12(b)(6) motion to dismiss.  While the Tenth Circuit has not specifically addressed this issue, other Circuit Courts of Appeal and district courts in this Circuit have held that an expert declaration is not a "written instrument" within the meaning of

---

[31] Doc. 27-32.

[32] *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) (citing *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016)).

[33] *See, e.g., Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1325 (Fed. Cir. 2020) (explaining patent eligibility is based on "focus" of the claims) (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) ("[W]hen analyzing patent eligibility, reliance on the specification must always yield to the claim language identifying that focus.").

[34] Marble's reliance on *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, No. 17CV171, 2017 WL 5502940, at *3–4 (N.D. Fla. Nov. 6, 2017) is not particularly helpful.  In that case, where the court ultimately granted the motion to dismiss at *Alice* step one, the court considered the expert declarations attached to the patent infringement complaint "to the extent that the declarations . . .  are not conclusory." *Id.*  Marble does not cite, nor did the Court find, any Federal Circuit authority supporting its argument that it is appropriate to consider expert declarations attached to a patent infringement complaint on a Rule 12(b)(6) motion.

Rule 10(c).[35]  The Court finds these holdings to be persuasive and thus exercises its discretion to disregard the Minoli Declaration attached to the FAC because it is not a "written instrument" under Fed. R. Civ. P. 10(c).

## III.   Factual and Procedural Background

The Court takes the following facts from Marble's FAC and the documents properly attached thereto.  The Court is careful to avoid allegations in the FAC drawn verbatim from the "summary opinions" of the Minoli Declaration instead of the '129 Patent.

### A.   Parties and Proceedings

Marble is a domestic limited liability company incorporated in Texas.  Zoom is a communications technology company based out of California, whose mission is "to make video communications frictionless."[36]

On July 15, 2020, Marble was assigned all rights, title, and interest in the '129 Patent at issue.  On June 22, 2022, Marble sent a Notice Letter to Zoom stating its belief that Zoom's platforms, including Zoom Phone and Zoom Meetings (the "Accused Products"), infringe the '129 Patent.  This lawsuit was filed the next day, asserting direct and indirect infringement under 35 U.S.C. §§ 271(a), (b) and (c) of claims 1–3, 5–15, and 17–31 of the '129 Patent.  Zoom moved to dismiss the original Complaint and on November 18, 2022, Marble filed its FAC.

---

[35] *See Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015) (holding affidavit attached to complaint is not written instrument under Rule 10(c)); *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (noting that considering affidavits at Rule 12(b)(6) stage "would further blur the distinction between summary judgment and dismissal for failure to state a claim  upon which relief could be granted"); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (holding district court did not abuse its discretion in refusing to consider expert affidavit bolstering fraud claims that was attached to complaint on Rule 12(b)(6) motion); *Allen v. Wal-Mart Stores, Inc.*, No. 19-cv-03594, 2020 WL 3000957, at *2 (D. Colo. June 3, 2020) ("[W]itness affidavits and other exhibits containing largely evidentiary materials are not considered 'written instruments' under Rule 10(c).").

[36] Doc. 30 at 7.

Zoom contends that the '129 Patent is invalid and asks the Court to dismiss Marble's FAC under Rule 12(b)(6) for failure to state a claim.

### B.      The Asserted '129 Patent

The '129 Patent is entitled "Enabling Collaborative Applications Using Session Initiation Protocol ("SIP") Based Voice over Internet Protocol Networks ("VoIP")."[37]  The '129 Patent was filed on October 29, 2003, and was issued May 20, 2008 to Arup Acharya et al.  The patent explains that when it was filed, "(SIP) [was] emerging as the vehicle for enabling VoIP in enterprise and carrier networks," but had shortcomings.[38]  Specifically, "[m]ost VoIP applications [were] stand-alone applications such as an IF Softphone, which runs on a user laptop allowing a user to place and receive voice calls."[39]  Because existing SIP support "[was] bundled with individual applications such as an IM client or an IP softphone," existing systems were unable to support concurrent SIP sessions, and "a need exist[ed] for a framework for enabling applications with VoIP using SIP."[40]

As a solution, the '129 Patent provides, *inter alia*, "a core framework for enabling applications to use [SIP]-based [VoIP]," in essence, moving SIP support from individual applications to the operating system, which would recognize and highlight "clickable" SIP links in different programs for the user.[41]  The '129 Patent purports to create a significantly more secure environment by decreasing the potential vulnerability entry points from malware and other external intrusions.[42]  The claimed invention also purports to solve multiple technical

---

[37] Doc. 27-1.

[38] *Id.* at 1:16–17.

[39] *Id.* at 1:24–27.

[40] *Id.* at 1:28–37, 1:40–41.

[41] *Id.* at 2:30–38; 10:1, 13, 22, 23.

[42] *Id.* at 1:29–43.

problems in the prior art and provide specific technical advancements by, *inter alia*, eliminating redundancies by reducing the duplication of code, thereby alleviating the strain of multiple, concurrently running SIP protocols.[43]

Figure 1 of the '129 Patent is reproduced below:



### C.   The Claims

The '129 Patent makes thirty-one claims, including four independent claims (claims 1, 13, 22, and 23) and twenty-seven dependent claims, which either reference the independent claims or reference other dependent claims that themselves reference the independent claims.

Claim 1 recites:

> A method for enabling voice over Internet for computer applications, comprising the steps of registering session initiation protocol (SIP) as a system service; providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications; providing a

---

[43] *Id.* at 3:9–17.

SIP link within a software application to permit user invocation of SIP service functions to enable voice over Internet service within the software application; and passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application.

Claim 13 recites:

A method for enabling voice over Internet for computer applications, comprising the steps of registering session initiation protocol (SIP) as a system service; providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application; and passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application.

Claim 22 recites:

A program storage device readable by machine, tangibly embodying a program of instructions executable by the machine to perform method steps for enabling voice over Internet for computer applications, the method steps comprising: registering session initiation protocol (SIP) as a system service; providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application; and passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application.

Claim 23 recites:

A system for providing a session initiation protocol (SIP) service on a client machine, comprising: a SIP softphone, which transmits and receives voice packets and provides basic call setup and teardown functions directly from a client machine; a SIP thin client, which invokes SIP signaling for call setup and teardown from an external entity to the client machine; a SIP wrapper, which based on user input, passes control to either the thin client or the

softphone; and a SIP application programming interface (API), which permits different applications to access SIP service.[44]

**D.      Zoom's Acts of Infringement**

Marble alleges that "on information and belief," Zoom directly infringes upon the framework set forth in claims 1 through 3, 5 through 15, and 17 through 31 of the '129 Patent by making, using, offering to sell, selling and/or importing its Zoom Phone Product and its Zoom Meetings Platform either literally or under the doctrine of equivalents.  The Zoom Phone is a mobile phone that makes and receives VoIP for computer applications.[45]  It registers SIP as a system service to handle inbound and outbound calls, transfer calls, dial-in and dial-out of meetings; to establish a do-not-disturb for a device; and to set up voicemail with a message-waiting indicator.[46]  The Zoom Meetings platform supports SIP-connected audio for participants in Zoom meetings, and allows participants to use VoIP to connect audio to the virtual meeting.[47]  Marble alleges that the implementation of SIP-based VoIP on the Zoom Meetings platform and Zoom Phone product directly infringes the '129 Patent.[48]

Marble further alleges that Zoom actively induces infringement by others under 35 U.S.C. § 271(b) by providing to the public Zoom Phone and Zoom Meetings, touting the products' benefits, and instructing users how to use the products in a manner that indirectly infringes the '129 Patent.  Additionally, Marble alleges on information and belief, that Zoom knows that the Zoom Phone and Zoom Meetings platform is not a staple article or commodity of

---

[44] Doc. 27-1 at 10:1, 13, 22, 23.

[45] Doc. 27 ¶ 36.

[46] *Id.*

[47] *Id.* ¶¶ 75–76.

[48] *Id.* ¶¶ 44–88.

commerce and that its products are not suitable for substantial, non-infringing use, resulting in conduct that constitutes contributory infringement under 35 U.S.C. § 271(c).

## IV.    Analysis

### A.    Section 101 Eligibility

Before turning to whether the factual allegations in the FAC are sufficient to withstand a motion to dismiss with respect to § 101 eligibility, the Court addresses Zoom's argument that Claims 1 and 22 of the '129 Patent, which are singled out for discussion in the FAC, are representative of all the asserted claims for purposes of the Court's analysis.  Marble disputes this and argues that because Zoom has failed to meet its initial burden of proving that Claims 1 and 22 are representative, Zoom should be required to separately address each asserted claim under its § 101 analysis.

The Federal Circuit has explained that in the absence of agreed-upon representative claims, the court need not analyze each and every claim of the patent-in-suit.[49]  A district court may conduct its own analysis and determine which claims are representative if "all the claims are 'substantially similar and linked to the same abstract idea.'"[50]  Here, resolution of this issue is unnecessary because even if the Court assumes that Claims 1 and 22 are representative of all the asserted claims for purposes of its § 101 analysis, Zoom has failed to establish that those claims are invalid under § 101.

---

[49] *Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

[50] *Id.* (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, Nos. 12-2501, 12-6960, 2013 WL 3964909, at *5 (D.N.J. July 31, 2013)); *see Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted) (holding courts may "treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim.").

1.     *Alice* Step One: "Directed to Inquiry"

As part of *Alice*'s first step, courts must consider whether the character of the claims "as a whole" is directed to an abstract idea or other patent-ineligible concepts.[51]  The court must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful."[52]  The Federal Circuit has approached step one "by asking what the patent asserts to be the focus of the claimed advance over the prior art.  In conducting that inquiry, [the court] must focus on the language of the [a]sserted [c]laims themselves, considered in light of the specification."[53]  "Similarly, the court may consult the intrinsic evidence" to answer the step one inquiry.[54]  Courts must take care not to oversimplify key inventive concepts or downplay an invention's benefits.[55]  Further, "it is not enough to merely identify a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'"[56]

It is widely acknowledged that there is no single definition of an abstract idea.  Instead, the Supreme Court and the Federal Circuit "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases."[57]  Courts

---

[51] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

[52] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (quoting *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017)).

[53] *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (second and third alterations in original) (quoting *TecSec Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020)).

[54] *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372–73 (Fed. Cir. 2020) ("In determining what the claims are directed to and whether they are directed to an abstract idea, a court may well consult the plain claim language, written description, and prosecution history.").

[55] *Enfish*, 822 F.3d at 1337–38; *see also McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (explaining that "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." (quotation omitted)).

[56] *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

[57] *See Enfish*, 822 F.3d at 1334.

considering computer-implemented inventions have distilled some guideposts from Supreme Court and Federal Circuit precedent in determining whether an invention is directed to an abstract idea.  "In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool."[58] This principle has been described as requiring a "technological solution to a technological problem specific to computer networks."[59]  The Federal Circuit has found patent eligible claims that provide for an improvement in the operation of a computer, such as a new memory system, a new type of virus scan, or a new type of interface that makes a computer function more accessible.[60]  By contrast, the Federal Circuit has repeatedly held that a claim is abstract if it describes a process in "result-based functional language" and fails to "sufficiently describe how to achieve these results in a non-abstract way."[61]

Zoom argues that under *Alice* step one, the FAC fails to state a claim for relief for three reasons: (1) the claims in the '129 Patent lack specific tangible implementation and invoke computers merely as tools to implement the abstract idea of using a computer to store, display, and process data on a computer, i.e., "clickable" links; (2) claims directed to storing, processing, displaying, and transmitting data are routinely found invalid as abstract; and (3) the claims can

---

[58] *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306–07 (Fed. Cir. 2020) (citing *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020)).

[59] *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1301 (Fed. Cir. 2016) (citation omitted); *see also In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (claims held patent-ineligible because they "are not directed to a solution to a 'technological problem'").

[60] *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007–11 (Fed. Cir. 2018) (methods for making electronic spreadsheets more accessible); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (improved display devices); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303–06 (Fed. Cir. 2018) (novel method of virus scanning); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258–60 (Fed. Cir. 2017) (improved computer memory system).

[61] *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (citation omitted).

be carried out using a pen and paper.  Marble responds that Zoom grossly understates the technological impact of the system service architecture at the center of the '129 Patent as well as the problems addressed by the patented invention.  Instead of an abstract idea, the claims provide a "core framework" directed at how data should be processed.

To support this argument, Marble relies on language from the '129 Patent's specification that the asserted claims provide a "core framework"—registering SIP at the system level as opposed to the application level, together with a relocated and newly available API—that is directed at *how* data should be processed.  Marble argues that this "improved architecture" (1) solves a problem particular to SIP-based VoIP networks, specifically, by making the system more secure; and (2) provides specific technical improvements to computer functionality, specifically, by reducing code duplication and alleviating strain on the device's central processing unit ("CPU"), enhancing the capabilities of existing applications, and expanding capabilities of known components such as a "thin client."

At oral argument, counsel for Marble and Zoom cited what they considered the best Federal Circuit case support for their respective *Alice* step one arguments.  The Court begins by analyzing cases upon which Marble relies in which the Federal Circuit held that the claims were patent-eligible.  *Amdocs (Israel) Limited v. Openet Telecom, Inc.* involved a patent claim that combined two different datasets.[62]  The Federal Circuit reversed the district court judgment on the pleadings holding computer program apparatus and method claims from four patents invalid under § 101.[63]  The court explained that "[i]mportantly, these components are arrayed in a distributed architecture that minimizes the impact on network and system resources.  Through

---

[62] 841 F.3d 1288, 1300 (Fed. Cir. 2016).

[63] *Id.* at 1305–06.

this distributed architecture, the system minimizes network impact by collecting and processing data close to its source."[64]  The patents explained that the system "is an advantage over prior art systems that stored information in one location, which made it difficult to keep up with massive record flows from the network devices and which required huge databases."[65]  The court contrasted the claims at issue from claims it had found ineligible in other cases, noting that in other cases the claims involved the "mere collection and manipulation of information" and were not "tied to a specific structure of various components."[66]

In *Visual Memory LLC v. NVIDIA Corp.*, the Federal Circuit held that patent claims directed to an improved computer memory system were patent-eligible and not directed to an abstract idea.[67]  The memory system disclosed in the patent at issue in that case contained three separate caches, each of which was "programmable based on the type of processor connected to the memory system."[68]  The patented system "separate[ed] the functionality for the caches and defin[ed] those functions based on the type of processor" being used with the memory system.[69]  The court held that the claims were directed to "a technological improvement: an enhanced computer memory system," and noted that "the specification discusse[d] the advantages offered by the technological improvement."[70]  The court explained that "this is not a case where the

---

[64] *Id.* at 1291 (citation omitted).

[65] *Id.* at 1292.

[66] *Id.* at 1300–01.

[67] 867 F.3d 1253, 1259–62 (Fed. Cir. 2017).

[68] *Id.* at 1256.

[69] *Id.*

[70] *Id.* at 1259–60 (citing *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)).

claims merely recite . . . 'generalized steps to be performed on a computer using conventional computer activity.'"[71]

By contrast, Zoom relies upon cases in which the Federal Circuit held the patents to be directed to an abstract idea.  In *VeriPath, Inc. v. Didomi*, the claim was generally directed to a data privacy system that purports to address the drawbacks "of current data collection/privacy schemes by providing an improved, more transparent opt-in process."[72]  The Federal Circuit affirmed the trial court's finding that, "[s]tripped of excess verbiage," the representative claims were "anchored on the abstract idea of exchanging privacy for functionality" because they were "directed to no more than an improvement to the abstract notion of exchanging privacy for functionality that utilizes an API to achieve the desired result."[73]  Because "it is not enough . . . to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool," the court concluded the claim was directed to an abstract idea.[74]

Similarly, in *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, the Federal Circuit held that two patents claiming a method for routing streams of audio and/or visual information over a communication network were directed to an abstract idea.[75]  The court affirmed the district court's holding that the asserted claims were patent ineligible because the claims could not "fairly be read to recite computer architecture even in light of [plaintiff's]

---

[71] *Id.* at 1260 (quoting *Enfish*, 822 F.3d at 1338) (collecting cases where claims were directed to patent-ineligible subject matter).

[72] 842 F. App'x 640, 641 (Fed. Cir. 2021).

[73] *Id.* at 643 (alteration in original) (quoting *VeriPath, Inc.*, No 19 Civ 1702, 2020 WL 1503687, at *3 (S.D.N.Y. Mar. 30, 2020)).

[74] *Id.* (alteration omitted) (quoting *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020)).

[75] 874 F.3d 1329, 1334–35, 1337 (Fed. Cir. 2017).

proposed claim constructions."[76]  The court explained that "[t]he claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,'" but "recite[s] only conventional computer components."[77]  As a result, the claim "manipulates data but fails to do so in a non-abstract way."[78]

The above-cited precedent supports the conclusion that the '129 Patent does not fail the step one inquiry at this stage of the proceedings.  The Court finds the claims in the '129 Patent are less like claims involving data gathering, processing, routing, converting, controlling, and transmitting, and more like claims involving a more efficient computer system—that is, a specific improvement in computer functionality.  In the cases cited by Zoom, the patents in question were directed to an abstract idea implemented by technological means, rather than to a modification or improvement of the technological means themselves.  By contrast, the FAC alleges that the '129 Patent claims are directed to what Marble asserts is a novel computer architecture that is designed to solve problems particular to SIP-based VoIP networks.  It is this focus on a particular improvement in then-existing computer technology that distinguishes the '129 Patent from the non-eligible cases cited by Zoom.

Here, Zoom's characterization of the claims as directed to the abstract idea of using computer software to recognize and manipulate data in the form of "clickable" links is the type of oversimplification of claims that the Federal Circuit has cautioned lower courts to avoid.  The FAC specifically alleges that the '129 Patent's architecture solves a computer-specific functionality problem in the prior art and provides specific technological advancements.[79]

---

[76] *Id.* at 1336 (quoting *Two-Way Media Ltd.*, Nos. 14-1006, 14-1212, 2016 WL 4373698, at *5 n.3 (D. Del. Aug. 15, 2016))

[77] *Id.* at 1337–38.

[78] *Id.* at 1338.

[79] Doc. 27 ¶¶ 21–27.

Although the claimed elements of the '129 Patent can be considered as functional, the FAC alleges sufficient structure in the claims to plausibly ensure that they do not lay claim to an end result rather than the method employed to achieve that result.  Further, these allegations are non-conclusory and plausible because they are grounded in the contents of the '129 Patent.[80]

On review of the parties' briefing and oral argument, and after reviewing the claim language and the specification of the '129 Patent, the Court concludes that resolution of the *Alice* step one analysis would be inappropriate at this stage of the proceedings.  Although Zoom is correct that the Federal Circuit has frequently made *Alice* eligibility determinations at the pleading stage, this does not mean that the determination should necessarily be made at this stage of the proceedings.[81]  The Court is mindful that the present motion seeks dismissal under Rule 12(b)(6) and thus the Court must accept as true and construe in the light most favorable to Marble all material factual allegations of the FAC.  Zoom's invalidity defense does not appear plainly on the face of the FAC and '129 Patent.  Because the patent contains technical subject matter, the Court is unable to effectively evaluate it on its face alone; since the Court lacks independent knowledge of how SIP-enabled VoIP computer architecture works, it would be inappropriate to disregard the allegation in the FAC that the claimed improvements are directed at computer-specific functionality problems.[82]  The Court is satisfied, at least at the Rule 12(b)(6)

---

[80] *See supra* Section III.B. at 8–9; Doc. 27-1 at 1:11–42, 2:30–38.

[81] *See, e.g.*, *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261–62 (Fed. Cir. 2017) (explaining that a holding that claims are not directed to an abstract idea "is particularly proper on a motion to dismiss under Rule 12(b)(6), where all factual inferences drawn from the specification must be weighed in favor of Visual Memory, the non-moving party."); *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 486 (D. Del. 2022) (holding that under *Visual Memory*, the claims were not abstract, and explaining that although the claimed components standing alone can fairly be considered as generic, the claims recited a specific structure and division of functions that are represented to constitute a technological improvement).

[82] *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019) ("Determining patent eligibility requires a full understanding of the basic character of the claimed subject matter." (citing *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012))).

stage, that Marble has plausibly alleged that the '129 Patent is sufficiently concrete to satisfy step one of the *Alice* inquiry.  While Zoom may be able to refute this allegation at a future stage of the case, it would be premature to make that determination at this time.

### 2.      *Alice* Step Two: Inventive Concept

Because Zoom has failed to satisfy step one, the Court need not proceed to step two of *Alice*.  The Court finds alternatively, however, that even if Zoom satisfied step one, factual issues at step two would preclude dismissal.  At step two, the Court must consider whether the patent asserts an "inventive concept" individually and as an ordered combination.  This involves, *inter alia*, consideration of whether the patent improves on the "prior art" of technology in the relevant area.

"Whether the claim elements or the claimed combination are well-understood, routine, [or] conventional is a question of fact."[83]  Marble points to several factual issues the Court would have to consider at step two: (1) whether registering SIP as a system service is a conventional inventive concept; (2) whether placement of the API at the higher functional level, configured to be made available to each application at the OS level, is unconventional because prior to the '129 Patent, SIP service was provided to each application individually; (3) whether the ordered combination of the '129 Patent claims directed to the system service architecture improves computer functionality through the reduction of code duplication; and (4) whether the "core framework" claimed in the patent expanded the capabilities of known components such as the "thin client."

Marble further argues that claim construction is needed to obtain a full understanding of the claims prior to granting Zoom's motion to dismiss, as the claims are directed to specific

---

[83] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

architecture/structures defined in the claim language.  Although Marble does not explain which claim terms require construction or propose a construction of any particular term, the Federal Circuit has noted that "the need for claim construction might be apparent just from the claim terms themselves, to arrive at 'a full understanding of the basic character of the claimed subject matter.'"[84]  This is the case here, where the Court lacks independent knowledge of how SIP-enabled VoIP computer architecture works.

Accordingly, the Court finds that determining whether the claims of the '129 Patent recite an inventive concept and the related comparison of the patent to the prior art in SIP-enabled VoIP technology are fact-intensive inquiries.  On this factual record, the Court must draw factual inferences in Marble's favor.  On the FAC and the documents properly incorporated by reference into the FAC, the Court is merely presented with the competing assertions of the parties.  At this stage of the proceedings, the Court cannot definitively conclude whether the '129 Patent claims an inventive concept over the prior art and thus, Zoom cannot satisfy step two of *Alice*.  The motion to dismiss is denied on this alternative ground.[85]

Finally, the Court clarifies that it does not decide at this time that the underlying claims are patent eligible, but instead holds only that there are plausible factual allegations that the claims are not directed to an abstract idea or do include inventive concepts.[86]

---

[84] *Id.* (quoting *Bancorp*, 687 F.3d at 1273–74).

[85] *See, e.g.*, *id.*; *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317–19 (Fed. Cir. 2019) (vacating district court's finding on a motion to dismiss that claims directed to the abstract idea of "capturing and transmitting the data from one device to another" were invalid, as there were fact issues as to whether the claims had an inventive concept; noting that the complaint made "plausible factual allegations about why aspects of the claimed inventions were not conventional, *e.g.*, its two-step, two-device structure requiring a connection *before* data is transmitted"); *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("[S]ome inventions' basic thrust might more easily be understood as directed to an abstract idea, but under step two of the *Alice* analysis, it might become clear that the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible." (second alteration in original) (quoting *Alice*, 573 U.S. 208, 225 (2014)).

[86] *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 136 (Fed. Cir. 2022).

B. **Sufficiency of Marble's Indirect Infringement Allegations**

In patent-infringement cases, allegations of direct and indirect infringement are governed by the pleading standards of *Iqbal* and *Twombly*.[87]  This does not require a plaintiff to plead infringement "element by element."[88]  Nonetheless, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."[89]

Zoom moves to dismiss the FAC for failing to adequately plead indirect infringement of the '129 Patent, focusing on the allegations regarding whether it had the requisite notice of the patent.  Marble contends that its FAC meets the evidentiary threshold necessary to withstand a motion to dismiss.  The Court first addresses Marble's induced infringement claim, then turns to its claim of contributory infringement.

1. **Induced Infringement**

"Whoever actively induces infringement of a patent shall be liable as an infringer."[90]  To establish an inducement claim, a plaintiff must show that an alleged inducer: (1) knew of the patent, (2) knowingly induced the direct infringing acts, and (3) possessed a specific intent to encourage another's infringement of the patent.[91]  "Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice."[92]  Instead, "specific

---

[87] *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).

[88] *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021).

[89] *Id.* at 1353.

[90] 35 U.S.C. § 271(b).

[91] *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006)).

[92] *Id.* (citing *DSU Med. Corp.*, 471 F.3d at 1305–06).

intent and action to induce infringement must be proven."[93]  "An induced-infringement claim survives a motion to dismiss when the complaint pleads facts plausibly showing that the infringer specifically intended another to infringe the patent and knew those acts constituted infringement."[94]  Specific intent may be shown by establishing (1) that the defendant "intended to cause the acts that constitute the direct infringement," and (2) the defendant "kn[ew] or should have known [that] its action would cause the direct infringement."[95]

### a.   Zoom's knowledge of the '129 Patent at the time the alleged infringement took place

Marble alleges in the FAC that Zoom's knowledge of the '129 Patent was established at least as of June 2022, when the Notice Letter informed Zoom of its infringement and demanded Zoom cease and desist its infringing actions.[96]  It further alleges that Zoom "received notice" of the '129 Patent through in-house or outsourced "monitoring of the issuance of U.S. Patents."[97]  Alternatively, it alleges at the least, Zoom had full knowledge of its infringing activities as of the filing of the original Complaint.

Zoom argues that Marble has not plead any facts alleging Zoom's knowledge of the '129 Patent at the time the alleged infringement took place.  First, it complains that Marble's Notice Letter, received by Zoom less than 24 hours before Marble filed suit, is insufficient notice by Marble and a ploy to "gin up" a factual basis to plead indirect infringement.[98]  Although Marble

---

[93] *Cleveland Clinic Found. v. True Health Diagnostics, LLC*, 859 F.3d 1352, 1364 (Fed. Cir. 2017) (citing *DSU Med. Corp.*, 471 F.3d at 1305).

[94] *Gardner v. Engenious Designs LLC*, No. 21-2548-HLT-ADM, 2022 WL 1442846, at *3 (D. Kan. May 6, 2022) (citations omitted).

[95] *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) (alterations in original) (quoting *DSU Med. Corp.*, 471 F.3d at 1305).

[96] Doc. 27-7.

[97] Doc. 27 ¶ 42.

[98] Doc. 30 at 24 n.6.

responds that the content of the letter was sufficient to provide the requisite notice, it does not address the timing of the letter.  The Court agrees that 24 hours was not enough time to provide an alleged infringer the opportunity to cease infringing or to negotiate a license prior to the lawsuit being filed.[99]

Second, Marble alleges that Zoom received notice of the '129 Patent through in-house or outsourced monitoring of patent issuance.  As Zoom points out, however, this allegation does not state a facially plausible factual allegation because the '129 Patent was issued in 2008—three years before Zoom was founded.

Finally, Zoom takes issue with Marble's allegation that the original Complaint provides the required notice to support the indirect infringement allegations in the FAC.  As Zoom acknowledges, district courts are split on this issue and neither the District of Kansas nor the Federal Circuit has answered it.  Some district courts have held, "[a] complaint is a perfectly adequate notice to defendants for indirect infringement claims for post-filing conduct."[100]  Other courts have reasoned, "[t]he purpose of a complaint is to obtain relief from an existing claim and not to create a claim."[101]  A third approach has split the issue between willful and indirect infringement claims, holding with respect to the latter, were the plaintiff "not permitted to amend a complaint [to allege notice since the filing of the original complaint], it would be the equivalent of saying that the plaintiff's failure to give notice of the patents outside of litigation operated as a

---

[99] *See Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 646 (N.D. Cal. 2022) (holding that plaintiff did not plausibly plead adequate notice when "notice of infringement [was given] less than twenty-four hours before commencing . . . action").

[100] *See CAP Co. v. McAfee, Inc.*, Nos. 14-cv-05068, 14-cv-05071, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015) (collecting cases).

[101] *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 251 (D. Del. 2021) (quoting *Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792, 2020 WL 3167641, at *2 n.1 (D. Del. June 15, 2020)).

bar to bringing a suit for indirect infringement."[102]  The Court finds this third approach persuasive, and concludes that the FAC's allegation of knowledge based on the filing of the original Complaint is sufficient to state a claim for post-suit induced infringement.[103] Accordingly, the Court finds that Marble plausibly alleges that Zoom had post-suit knowledge of the '129 Patent.  Zoom's motion to dismiss is denied on this ground.

**b.    Zoom's knowledge and intent to cause infringement by customers**

Zoom further argues that the FAC fails to plead any facts supporting a reasonable inference of specific intent or knowledge of infringement.  The Court disagrees.  The FAC specifically notes the ways in which Zoom actively involves itself in the instructions and technical support of the infringing products.  The FAC alleges that Zoom induced infringement of the '129 Patent "by providing to the public, at a minimum, the Zoom Platform, along with touting the benefits of the Zoom Platform and with instructions for using these software platforms to the public, in a manner that directly infringes the Patent-in-Suit."[104]  The FAC further details the ways in which Zoom provides instructions via Harvard University for joining a Zoom Meeting conference room, and providing technical support instructions for doing the same via Zoom Phone.[105]  Thus, the FAC identifies the ways in which Zoom actively involves itself in the instructions and technical support of the infringing products and Marble has made sufficient allegations of specific intent to survive a motion to dismiss.[106]

---

[102] *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-cv-1345, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021) (citations omitted) (distinguishing willful infringement claims, which are based on a defendant's bad state of mind).

[103] *See id.*; *accord DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, *Inc.*, No. 18-098, 2019 WL 3069773, at *3 (D. Del. July 12, 2019).

[104] Doc. 27 ¶ 43.

[105] *Id.* ¶¶ 54, 77.

[106] *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (reversing the dismissal of induced infringement claims where the patentee alleged that the "defendants had knowledge of the [patent-in-suit]

## 2. Contributory Infringement

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'"[107]  To plead a claim for contributory infringement under § 271(c), a plaintiff must plausibly allege that (1) the defendant knew of the patent, (2) the defendant knew of the patent infringement, and (3) the accused product is not a staple article or commodity that has a substantial non-infringing use.[108] Contributory infringement requires "only proof of a defendant's *knowledge*, not *intent*, that his activity cause infringement."[109]  "In the context of a claim of contributory infringement under § 271(c), a substantial non-infringing use is any use that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'"[110]

The FAC alleges:

> Upon information and belief, Zoom knows that Zoom Phone is
> especially made or adapted for use in a manner that infringes the
> '129 Patent, that Zoom Phone is not a staple article or commodity
> of commerce, and that Zoom Phone is not suitable for substantial
> non-infringing use, resulting in conduct that constitutes, at a
> minimum, patent infringement under 35 U.S.C. § 271(c).  Upon

---

and performed various activities with the specific intent to induce the others" to infringe, such as "providing instructions, support, and technical assistance for the use of the [accused product]"); *cf. Apple Inc. v. Princeps Interface Techs. LLC*, No. 19-cv-06352, 2020 WL 1478350, at *4 (N.D. Cal. Mar. 26, 2020) (holding "general and imprecise references to 'instructional materials and/or services related to the [accused products]" are insufficient allegations of specific intent to survive a motion to dismiss (citing *CAP Co. v. McAfee, Inc.*, No. 14-cv-05068, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015))).

[107] *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (quoting 35 U.S.C. § 271(c)).

[108] *Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015)).

[109] *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990)).

[110] *In re Bill of Lading*, 681 F.3d at 1337 (quoting *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327–29 (Fed. Cir. 2009)).

> information and belief, by using the Zoom Phone software a
> customer necessarily infringes on the patent as described above,
> and there is no substantial non-infringing use.[111]

The FAC makes identical allegations with respect to the Zoom Meetings platform.[112]  Marble

makes these allegations after setting forth a plausible explanation of how the Accused Products

directly infringe.[113]  This is enough at this stage of the proceedings.

While the burden of proof as to the absence of non-infringing uses ultimately lies with

Marble, the FAC does not need to "plead with specificity something that does not exist" in order

to state a claim for contributory infringement.[114]  Zoom argues that Marble's FAC repeatedly

refers to myriad aspects of the accused software platforms that include a variety of non-

infringing uses, such as mute/unmute features, emergency calling, tone compatibility, call

history, voicemail, and SMS messaging.  But Zoom does not explain how this would necessarily

defeat the contributory negligence claims.  The Federal Circuit has held that a defendant can be

liable as a contributory infringer if it sells a product that has a component that has no use other

than infringing a patent, even if the product, as a whole, can be used for other things.[115]  Here,

the FAC alleges that the Accused Product platforms use or support SIP-enable VoiP, are

especially made or adapted for use in a manner that infringes the '129 Patent, the Accused

Products are not suitable for non-infringing use, that using the Accused Product software

necessarily infringes upon the '129 Patent, and consumers directly infringe the '129 Patent

---

[111] Doc. 27 ¶ 63.

[112] *Id.* ¶ 85.

[113] *Id.* ¶¶ 21–31.

[114] *EyesMatch Ltd. v. Facebook, Inc.*, No. 21-111, 2021 WL 4501858, at *3 (D. Del. Oct. 1, 2021) (quoting *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2019 WL 330515, at *5 (D. Del. Jan. 25, 2019)).

[115] *See, e.g.*, *Richo Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1338 (Fed. Cir. 2008) ("When a manufacturer includes in its product a component that can *only* infringe, the inference that the infringement is intended is unavoidable." (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*, 545 U.S. 913, 932 (2005))).

through the use of Zoom Phone and Zoom Meetings platform.  If true, those facts may support a contributory infringement claim.  While Zoom may be correct that some of the individual features described in the claim chart have non-infringing uses, the Court cannot make that determination at the Rule 12(b)(6) stage.[116]  Zoom's motion to dismiss is denied on this ground.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Zoom's Motion to Dismiss Marble's First Amended Complaint (Doc. 29) is **denied**.

**IT IS SO ORDERED.**

Dated: April 24, 2023

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE

---

[116] *See Nalco, Co. v. Chem-Mod*, LLC, 883 F.3d 1337, 1357 (Fed. Cir. 2018) (holding when a plaintiff alleges that a product "has no substantial noninfringing uses . . . [the court] must presume these allegations are true at the pleading stage.  To the extent Defendants dispute these allegations, this is a factual inquiry not suitable for resolution on a motion to dismiss"); *Blackbird Tech. LLC v. Signify N. Am. Corp.*, No. CV 21-18463, 2022 WL 3098102, at *5 (D.N.J. Aug. 4, 2022) (denying motion to dismiss contributory infringement claim at Rule 12(b)(6) stage of the proceedings); *Voip-Pal.com, Inc. v. Facebook*, No. 21-cv-00665, 2022 WL 1394550, at *4 (W.D. Tex. May 3, 2022) (same).